4868-4203-4114

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UPMC PRESBYTERIAN SHADYSIDE, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| vs. | ) |
| | ) |
| BOSTON MARKET CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) ELECTRONICALLY FILED |

## COMPLAINT

Plaintiff, UPMC Presbyterian Shadyside, by and through its undersigned counsel Meyer, Unkovic & Scott LLP, files the within Complaint averring as follows:

### THE PARTIES

1. Plaintiff, UPMC Presbyterian Shadyside ("UPMC" or "Landlord") is a Pennsylvania non-profit corporation, with a registered office and principal place of business at Desoto at O'Hara Streets, Pittsburgh, PA 15213.

2. Upon information and belief, Tenant, Boston Market Corporation, ("Boston Market" or "Tenant"), is a foreign business corporation incorporated under the law of Delaware with a principal place of business at 14103 Denver West Parkway, Golden, CO 80401.

### JURISDICTION AND VENUE

3. This Court has federal diversity jurisdiction over this matter, as this controversy arises between citizens of different states and involves an amount in controversy in excess of the jurisdictional threshold set forth at 28 U.S.C. § 1332.

4. Venue is proper in this Court because the Lease at issue involves leased premises that are located within this judicial district. *See* 28 U.S.C. 1391(b)(2).

## BACKGROUND

**A.   The Lease**

5. Food Service Properties, LP ("Food Service") and Rax Systems, Inc. ("Rax") entered into an Indenture of Lease on November 15, 1978 whereby Rax agreed to lease from Food Service certain retail space located at 5200 Baum Boulevard, Pittsburgh, PA 15232 (the "Leased Premises"), to be used for the purposes of operating a restaurant (the "Original Lease"). A true and correct copy of the Original Lease is attached hereto as Exhibit "1" and incorporated by reference as if fully set forth herein.

6. The original term of the Original Lease was thirty (30) years and terminated in June 2009.

7. As a result of a series of assignments and assumptions of the Original Lease between 1978 and 2009, Boston Market Corporation became and has continued as the tenant of the Leased Premises, has occupied the Leased Premises and is obligated to perform under the Original Lease as assigned and amended from time to time.

8. On January 26, 2006, Food Service assigned the Lease to UPMC. A true and correct copy of the Assignment is attached hereto as Exhibit "2" and incorporated by reference as if fully set forth herein.

9. On June 20, 2008, Tenant exercised its option to renew the Lease for an additional five (5) years, with the renewal term expiring on June 30, 2014 ("First Renewal"). A true and correct copy of the First Renewal is attached hereto as Exhibit "3" and incorporated by reference as if fully set forth herein.

10. On June 12, 2013, Tenant exercised its option to renew the Original Lease for an additional five (5) years, with the renewal term expiring on June 20, 2019 ("Second Renewal"). A true and correct copy of the Second Renewal is attached hereto as Exhibit "4" and incorporated by reference as if fully set forth herein.

11. On April 29, 2019, UPMC and Tenant entered into a First Amendment to Lease ("First Amendment") under which the parties agreed to extend the Original Lease term an additional five (5) years, with the renewal term expiring on June 30, 2024. A true and correct copy of the First Amendment is attached hereto as Exhibit "5" and incorporated by reference as if fully set forth herein.

12. The Original Lease and all subsequent assignments, assumptions, and amendments thereto, including but not limited to those outlined above, shall be collectively referred to herein as the "Lease".

**B.     Boston Market's Default**

13. Pursuant to the Lease, Tenant agreed to pay base rent ("Base Rent") for the Leased Premises in an amount equal to $8,333.33 per month between July 2019 and June 2024. (Ex. 1, ¶ 3(a); Ex. 5, ¶ 4.)

14. Tenant has been delinquent on the payment of Base Rent since December 2021.

15. Pursuant to the Lease, it shall be considered an event of default of the Lease if "Lessee shall fail to pay an installment of rent promptly on the day when the same shall become due and payable hereunder, and shall continue in such default for a period of ten (10) days after written notice thereof[.]"  (Ex. 1, ¶ 24.)

16. By letter dated June 1, 2022, UPMC notified Tenant that its non-payment of Base Rent for January 2022 through June 2022, in the amount of $91,666.63 placed Tenant in default

of the Lease ("First Notice of Default".)  A true and correct copy of the First Notice of Default is attached hereto as Exhibit "6" and incorporated by reference as if fully set forth herein.

17. Tenant did not cure its nonpayment of rent after receiving the First Notice of Default.

18. UPMC notified Tenant via a second letter on January 4, 2023 that its failure to pay Base Rent since December 2021 (with the exception of one monthly payment in October 2022), in the amount of $133,333.28 placed Tenant in default of the Lease, if not cured within ten (10) days of the date of the letter ("Second Notice of Default").  A true and correct copy of the Second Notice of Default is attached hereto as Exhibit "7" and incorporated by reference as if fully set forth herein.

19. Tenant did not cure its nonpayment of rent after receiving the Second Notice of Default.

20. Additionally, during the Lease term, Tenant failed to maintain the driveway and sidewalk of the Leased Premises, in violation of Article 16 of the Lease, which requires Tenant to keep and maintain the Leased Premises in "good condition and repair."  (*See* Ex. 1, ¶ 16.)

21. In September 2022, UPMC engaged a third party to repair the driveway and sidewalk of the Leased Premises.

22. Since September 2022, Tenant also failed to properly maintain and service the fire suppression system at the Leased Premises, resulting in the issuance of multiple citations from the Allegheny County Health Department ("ACHD"), in violation of Article 10 of the Lease.

23. Article 10 of the Lease provides that the Tenant "shall comply with all Federal, State, County and City laws and ordinances" and further that Tenant "shall at all times keep the demised premises, the buildings thereon, and all appurtenances, in a clean and sanitary condition,

according to the applicable statutes, City ordinances and the directions and regulations of the proper public authorities." (*See* Ex. 1, ¶ 10.)

24. In March 2023, UPMC engaged a third party to perform an inspection of the fire suppression and alarm system and to replace the fire alarm panel.

25. On April 17, 2023, counsel for UPMC notified Tenant, via a third letter, that its failure to pay Base Rent since December 2021 (with the exception of one monthly payment in October 2022), in the amount of $158,333.27 placed Tenant in default of the Lease, if not cured within ten (10) days of the date of the letter ("Third Notice of Default"). A true and correct copy of the Third Notice of Default is attached hereto as Exhibit "8" and incorporated by reference as if fully set forth herein.

26. In the Third Notice of Default, UPMC also notified Tenant that its failure to resolve the ongoing proceedings before the ACHD relating to multiple alleged violations of the ACHD's health and safety regulations with respect to the Leased Premises was a violation of Article 10 of the Lease. (Ex. 1, ¶ 10; Ex. 8.)

27. The Third Notice of Default additionally notified Tenant that it was obligated under Article 10 of the Lease to reimburse UPMC for the expenses it incurred totaling $18,719.62 to remedy the fire suppression system and to repair other areas of the Leased Premises – the sidewalk and driveway – for which Tenant is responsible.

28. Tenant did not cure its nonpayment of rent after receiving the Third Notice of Default nor did it resolve the proceedings before the ACHD.

29. UPMC initiated a suit against Tenant in Magisterial District Court seeking possession only on June 26, 2023, and was ultimately awarded possession of the Property on August 17, 2023.

30. On November 27, 2023, UPMC obtained possession of the Property.

31. Upon vacating, Tenant failed to remove its equipment and outdoor sign from the Leased Premises in violation of Paragraph 6 of the First Amendment. (*See* Ex. 5, ¶ 6 ("Tenant, on or before the termination date set forth in the Termination Notice, or as a result of any other termination of the Lease, shall remove its equipment and furniture from the premises[.]").)

32. UPMC incurred costs in the amount of $13,960.00 to clear out and clean the Leased Premises and to remove Tenant's fixtures, equipment and outdoor sign.

33. Further, under the Lease, Tenant is obligated to pay annual real estate taxes for the Leased Premises. (Ex. 1, ¶ 17(a).)

34. Tenant failed to pay Allegheny County real estate taxes for 2022 in the amount of $125.55, Allegheny County real estate taxes for 2023 in the amount of $5,077.66, and local city and school district real estate taxes for 2023 in the $18,107.02.

35. Counsel for UPMC notified Tenant, via a fourth and final letter, that its nonpayment of real estate taxes in the amount of $23,310.23 placed Tenant in further default of the Lease, if not cured within ten (10) days of the date of the letter ("Fourth Notice of Default"). A true and correct copy of the Fourth Notice of Default is attached hereto as Exhibit "9" and incorporated by reference as if fully set forth herein.

36. Tenant did not cure its nonpayment of real estate taxes after receiving the Fourth Notice of Default letter.

37. As of the date of filing this Complaint, Tenant remains in default of the Lease for failing to pay Base Rent in the amount of $216,666.58, failing to reimburse UPMC for the expenses it incurred in maintaining portions of the Leased Premises for which Tenant is responsible in the amount of $18,719.62, failing to pay real estate taxes in the amount of $23,310.23, and failing to remove equipment and signage from the Leased Premises, which caused UPMC to incur costs in the amount of $13,960.00. A true and correct copy of the

Tenant's Ledger dated February 28, 2024 is attached here to as Exhibit "10" and incorporated by reference as if fully set forth herein.

## **BREACH OF LEASE**

38. UPMC incorporates each of the preceding Paragraphs of the Complaint as if fully set forth herein.

39. At the time Tenant signed the Lease, Tenant agreed and understood that Tenant would be bound and liable for any failures of its duties and obligations as set forth in the Lease.

40. At all times material hereto, Tenant had a duty under the Lease to pay monthly rental charges, including but not limited to Base Rent as defined by the Lease, at the times and in the amounts agreed to in the Lease.

41. Tenant breached its duty under the Lease by failing to pay rental charges, including but not limited to Base Rent, when due.

42. At all times material hereto, Tenant had a duty to pay real estate taxes for the Leased Premises.

43. Tenant breached its duty under the Lease by failing to pay real estate taxes when due.

44. At all times material hereto, Tenant had a duty to maintain the Leased Premises in clean and sanitary condition and in accordance with applicable local, state and federal governmental laws, regulations and ordinances.

45. Tenant breached its duty under the Lease by failing to maintain the Leased Premises in accordance with applicable ACHD regulations.

46. Upon vacating the Leased Premises, Tenant had a duty under the Lease to remove fixtures, equipment and furniture from the Leased Premises.

47. Tenant breached its duty under the Lease by failing to remove its fixtures, equipment and furniture upon vacating the Leased Premises.

48. As a direct and proximate result of Tenant's breaches of its duties as alleged herein, UPMC has been damaged in the amount of $272,656.43.

WHEREFORE, Plaintiff, UPMC Presbyterian Shadyside, requests that this Court enter judgment against Defendant Boston Market Corporation in the principal amount of $272,656.43, plus pre-judgment interest and costs of suit, as well as any such other relief as the Court deems appropriate.

Respectfully submitted,

MEYER, UNKOVIC & SCOTT LLP

By: */s/ Kate E. McCarthy*
    Antoinette C. Oliver
    Pa. I.D. #206148
    Kate E. McCarthy
    Pa. I.D. #325771

    535 Smithfield Street, Suite 1300
    Pittsburgh, PA  15222
    (412) 456-2800